IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PATRICIA ANN TODD                                                                        PLAINTIFF

v.                           Civil No. 2:15-cv-02048-PKH-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Patricia Todd, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her application for DIB on September 18, 2012, alleging an onset date of April 16, 2011, due to degenerative disk disease ("DDD"), fibromyalgia, headaches, and plantar fasciitis. Tr. 179, 194-195, 206-207, 214. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 70-96. An Administrative Law Judge ("ALJ") held an administrative hearing on September 6, 2013. Tr. 37-69. The Plaintiff was presented and represented by counsel.

At the time of the hearing, Plaintiff was 45 years old and possessed an eleventh grade education. Tr. 42. She had past relevant work ("PRW") experience as a cashier/checker and fast food manager. Tr. 32, 180, 186-193.

On November 1, 2013, the ALJ concluded that the Plaintiff's hypertension, fibromyalgia, degenerative joint disease ("DJD"), tendonitis of the left wrist, headaches, and anxiety disorder were severe, but found they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 25-27. He then determined that the Plaintiff could perform light work requiring frequent, non-repetitive grasping and fingering with her left, non-dominant, upper extremity. Tr. 28. After conferring with a vocational expert, the ALJ found the Plaintiff could perform her PRW as a cashier and fast food manager as those positions are generally performed in the national economy. Tr. 32.

On April 17, 2015, the Appeals Council ("AC") granted review, and concluded that the ALJ's inclusion of anxiety disorder as a severe impairment was not supported by substantial evidence. Tr. 4-7. Thus, the AC concluded that the Plaintiff could perform light work involving only frequent, non-repetitive grasping and fingering with her non-dominant left upper extremity. Tr. 5. As this did not preclude her from performing her PRW as a fast food manager and cashier, the AC found she was not disabled at any time through the date of the ALJ's decision. Tr. 6.

Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for Report and Recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 8, 9.

**II.     Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than

2

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520(a)(4)(v).

**III.     Discussion:**

Plaintiff contends that the ALJ erred by failing to afford the medical source statement of her treating physician, Dr. Suh Niba, the proper weight. Under the social security regulations, the commissioner will generally give a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). However, such weight is neither inherent nor automatic and does not "obviate the need to evaluate the record as whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). The commissioner "'may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)); *accord Hacker*, 459 F.3d at 937 (noting we have declined "to give controlling weight to the treating physician's opinion because the treating physician's notes were inconsistent with her . . . assessment").

4

The ALJ dismissed Dr. Niba's opinion, finding no support for it in the record. He concluded that the doctor's treatment notes revealed only routine, conservative treatment; did not document any tender points as is required for a diagnosis of fibromyalgia; and, lacked objective testing to support his diagnoses of DJD and OA. However, he also found her fibromyalgia and DJD to constitute severe impairments. Clearly, these two findings are inconsistent. Either the record supports a finding that she has these impairments or it does not.

Fibromyalgia is a common "nonarticular disorder" characterized by "generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 375 (Richard K. Albert et al. eds., 19th ed. 2011). The symptoms of fibromyalgia include generalized soft-tissue pain that is disproportionate to the physical findings, negative laboratory results despite wide spread symptoms, and fatigue. *Id.* Its cause is unknown, and there are no laboratory tests to determine its presence or severity. *Id.* Further, fibromyalgia treatment is conservative in nature, consisting of "exercise, local heat, stress management, drugs to improve sleep, and analgesics." *Id*.

Fibromyalgia can be both a severe and disabling impairment. *Brosnahan v. Barnhart*, 336 F.3d 671, 678 (8th Cir. 2003). However, the task of determining the severity of an individual's condition is particularly onerous given the subjective nature of its symptoms and the absence of objective clinical tests to confirm or negate a diagnosis. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, while others do not. Michael Doherty & Adrian Jones, *Fibromyalgia Syndrome (ABC of Rheumatology)*, 310 BRITISH MED. J. 386 (1995). Accordingly, in the context of fibromyalgia cases, the Eighth Circuit has held that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial

5

evidence of the ability to engage in substantial gainful activity. *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *Kelley v. Callahan,* 133 F.3d 583, 588-89 (8th Cir. 1998).

In April 2013, Dr. Niba completed a medical source statement. Tr. 256-261. Records reveal he had treated the Plaintiff since 2005. Dr. Niba listed her symptoms as back pain, joint pain, muscle aches, and anxiety. He described her pain as persistent and severe generalized back and joint pain made worse by exertion. Dr. Niba indicated that x-rays had confirmed his diagnosis of DJD/OA. Her treatment consisted of pain medication, anti-inflammatories, and physical therapy. In his opinion, her pain and associated symptoms would frequently (34%-66% of an 8 hour workday) interfere with the concentration and attention needed to perform even simple work tasks, rendering her incapable of performing even "low stress" jobs. Dr. Niba found that the Plaintiff could sit, stand, and walk less than 2 hours each per 8-hour workday; perform jobs offering a sit/stand option and allowing her to take brief unscheduled breaks every 30 minutes; lift less than 10 pounds occasionally and rarely more; rarely hold her head in a static position; occasionally look down, up or side to side; and, rarely twist, stoop (bend), crouch, and climb ladders or stairs. Dr. Niba also opined that the Plaintiff could use her right hand for grasping, turning, twisting, and fine manipulation 75 percent of the time, but could only use her left hand for the same activities 5 percent of the time. Further, he indicated she could bilaterally reach (including overhead) only 20 percent of the time. And, Dr. Niba opined that the Plaintiff's treatment and symptoms would cause her to be absent from work more than four days per month. Tr. 260.

For the purposes of the Plaintiff's DIB claim, she has provided us with records dating back to March 2011, alleging an onset date of April 2011. Her headaches, back pain, and anxiety date

6

back to at least March 2011, when Dr. Niba prescribed Lorazepam, Ambien, and Excedrin Migraine. Tr. 248-249.

She sought out treatment for numbness in her right hand and arm in April 2011. Tr. 246-247. Dr. Niba documented a positive Tinel's and Phalen's sign in the right wrist, supporting a diagnosis of CTS in the right wrist. He prescribed a cock-up splint to be worn at night. Knee pain, crepitus, back pain, and muscle spasms were also present supporting diagnoses of DJD of the knee and back pain for which Dr. Niba prescribed a knee brace and a TENS unit.

Between April 2011 and April 2012, the Plaintiff was treated for bronchitis, cellulitis, vertigo, high blood pressure, and allergies. Tr. 239-245. In January 2012, Dr. Niba noted some improvement in her back pain, but her exam revealed persistent tenderness in the lumbosacral spine. Tr. 239-340. He diagnosed cellulitis and fibromyalgia.

In April 2012, she reported doing "okay," but admitted continued joint pain. Tr. 238.

In May 2012, the Plaintiff complained of bilateral heel pain with mild ankle and arch pain. Tr. 236-237. Dr. Niba noted pain in the left calcaneal, resulting in a diagnosis of plantar fasciitis. He prescribed NSAIDs and insoles, and indicated that her condition might warrant injections. The pain persisted, resulting in her return for treatment in July 2012. Tr. 234-235. At that time, an examination revealed bilateral plantar pain. Dr. Niba diagnosed plantar fasciitis, tension headaches, rhinosinusitis, and polyarthritis/fibromyalgia. He then prescribed Naproxen, Fexofenadine (generic for Allegra), Sudafed, Flexeril, Tramadol, Diovan, Simvastatin, Excedrin Migraine, and Lorazepam.

In August 2012, the Plaintiff complained of right hip pain radiating down her leg, as well as joint and neck pain. Tr. 232-233. A straight leg raise test was positive on the right side. Dr. Niba diagnosed right piriformis syndrome and prescribed heat, NSAIDs, stretching, and rest.

7

In October 2012, she reported worsening numbness in the toes, pain in her left dorsal wrist, and headaches accompanied by nausea, photophobia, and phonophobia. Tr. 230-231. The Plaintiff admitted being out of her blood pressure medication for a few weeks, which could be the reason for her headaches. An examination revealed tenderness in the left wrist dorsally and bilateral toe paresthesias. Dr. Niba diagnosed left wrist tendonitis with Raynaud's phenomenon,[1] migraine headaches, and fibromyalgia. He prescribed NSAIDs, Diovan HCT, and Excedrin migraine.

In December 2012, Dr. Niba documented pain in the opponens pollicis muscle[2] in the right hand. Tr. 252-253. X-rays of the hand revealed no fracture, which resulted in a diagnosis of hand sprain. Dr. Niba also diagnosed hypertension, DJD/OA, and dyslipidemia. He prescribed Naproxen, NSAIDs, Diovan HCT, Zocor, and Ambien.

In February 2013, the Plaintiff complained of worsening pain in her left arm, generalized fatigue, muscle aches, backache, and anxiety. Tr. 272-273. Dr. Niba opined that her pain was likely a combination of seasonal affective disorder and fibromyalgia. However, the Plaintiff refused prescriptions for steroids, antidepressants, and Cymbalta. Accordingly, he prescribed Lorazepam and encouraged her to control her weight, exercise, and eat a diet low in fat and salt.

In March 2013, her left wrist, left hand, joint, and back pain were worse. Tr. 270-271. The Plaintiff also reported episodes of anxiety. Dr. Niba noted pain in the base of the thumb and difficulty grasping items, as well as pain in the neck, back, left wrist, left hand, and joints. He assessed her with hypertension, fibromyalgia, polyarthritis, and dyslipidemia for which he prescribed Diovan HCT, Naproxen, and Hydrocodone.

---

[1] Raynaud's phenomenon causes some are of the body, particularly the fingers and toes, to feel numb and cold in response to cold temperatures and/or stress. Mayo Foundation for Medical Education and Research, *Raynaud's disease*, http://www.mayoclinic.org/diseases-conditions/raynauds-disease/basics/definition/con-20022916.

[2] This muscle is a triangular muscle in the hand that functions to oppose the thumb.

In May 2013, the Plaintiff was treated for acute sinusitis, allergic rhinosinusitis, hypertension, dyslipidemia, and fibromyalgia. Tr. 268-296. An examination revealed diffuse back and joint pain as well as bilateral maxillary and frontal sinus tenderness. Dr. Niba prescribed Zithromax, Fexofenadine, Fluticasone nasal spray, a diet low in salt, weight control, and blood pressure monitoring.

In July 2013, the Plaintiff's wrist and heel pain persisted. Tr. 266-267. Dr. Niba diagnosed polyarthritis and possible piriformis syndrome.

As noted, the ALJ dismissed Dr. Niba's assessment, stating that his diagnosis of fibromyalgia was not supported by evidence documenting at least 11 of the 18 possible tender points. While tenderness at some of the 18 specified tender points is required, experts no longer require a specific number of tender points. THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 375 (Richard K. Albert et al. eds., 19th ed. 2011). The evidence of record documents fatigue; pain in the neck, lower back, left hand and wrist, and knee; generalized joint pain; headaches; and, difficulty sleeping, all of which are symptoms of fibromyalgia. *Id*. Thus, the undersigned does not find substantial evidence to support the ALJ's determination that Dr. Niba's diagnosis of fibromyalgia is not supported by the record. The evidence does document symptoms and treatment (*i.e.,* analgesics, muscle relaxers, antianxiety medication, rest, heat, and exercise) consistent with the treatment prescribed for fibromyalgia, necessitating remand for further consideration of Dr. Niba's opinion and the impact the Plaintiff's fibromyalgia would have on her ability to perform work-related activities. Should the ALJ have questions or concerns regarding Dr. Niba's opinion, we order him to address those questions and concerns to Dr. Niba prior to rendering an opinion on remand.

9

We also take issue with the ALJ's determination that the Plaintiff can perform frequent, non-repetitive grasping and fingering with her left upper extremity. The evidence reveals that the Plaintiff consistently sought out treatment for pain in her left wrist and hand. Moreover, in March 2013, she began experiencing difficulty grasping items. Dr. Niba indicated that she could only use her left hand for grasping, fingering, and manipulating five percent (5%) of the time. He also limited her to reaching with both extremities 20 percent (20%) of the time. Clearly, this is in direct conflict with the ALJ's finding of frequent use of the left upper extremity. Because any significant manipulative limitation of an individual's ability to bilaterally handle and work with small objects will result in a significant erosion of the unskilled sedentary and light occupational base, we find that remand is also necessary to allow the ALJ to reconsider the level of limitation imposed by the impairment to the Plaintiff's left upper extremity. SOCIAL SECURITY RULING ("SSR") 85-15; SSR 86-9p.

The undersigned is also puzzled by the ALJ's failure to include any postural limitations in his RFC determination. Dr. Niba, as well as two non-examining consultants, Drs. Jonathan Norcross and Bill Payne, concluded that the Plaintiff should be limited with regard to climbing, balancing, stooping, kneeling, crouching, and crawling. Tr. 76-77, 86-88. Although Dr. Niba assessed more restrictive limitations than those assessed by the other doctors, the ALJ failed to account for these limitations in the RFC assessment. Accordingly, on remand, we direct the ALJ to address the Plaintiff's postural limitations.

The record also suggests some limitations associated with plantar fasciitis. By March 2013, Dr. Niba noted that the Plaintiff's pain was slowing getting worse and leading to an inability to walk. Tr. 270-271. Further, he found the Plaintiff could walk and stand for a total of two hours each per eight-hour workday and would need a sit/stand option. Tr. 256-261. While we cannot

say that the Plaintiff's limitations were necessarily as extreme as Dr. Niba has indicated, the ALJ should have considered the effect Plaintiff's plantar fasciitis would have on her ability to perform the requisite standing and walking required by light work.

Additionally, Dr. Niba indicated that x-rays support his diagnoses of OA and DJD. These x-rays are not part of the current record, and we can find nothing to suggest that the ALJ ever attempted to obtain them. Therefore, on remand, we direct the ALJ to obtain any additional objective evidence that might be available to support Dr. Niba's diagnoses.

### V.     Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of September, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE